UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| TAMARA JEAN HENDERSON-PROUTY, | Case No. 19-CV-2742 (PJS/JFD) |
| Plaintiff, | |
| v. | ORDER |
| LOUIS DEJOY, Postmaster General, | |
| Defendant. | |

Zane A. Umsted, MADIA NEWVILLE LLC, for plaintiff.[1]

Ana Voss, UNITED STATES ATTORNEY'S OFFICE, for defendant.

Tamara Henderson-Hoving[2] was employed by the United States Postal Service ("USPS") as a Postmaster Relief Employee ("PMR") at the post office in Balaton, Minnesota. A PMR is a non-career, non-bargaining unit employee. In September 2014, Henderson-Hoving applied for a vacant position as a Postal Support Employee ("PSE")

---

[1]Henderson-Hoving's original complaint was filed pro se on October 21, 2019. ECF No. 1. After being contacted by the Pro Se Project, Zane Umsted of Madia Newville LLC agreed to represent Henderson-Hoving. ECF No. 19. (The Pro Se Project is "a partnership between the United States District Court for the District of Minnesota and the Minnesota Chapter of the [Federal Bar Association]" that is intended "to increase access to the federal court system while at the same time addressing the unique challenges of pro se litigation." *Rickmyer v. ABM Sec. Servs., Inc.*, No. 15-CV-4221 (JRT/FLN), 2016 WL 1248677, at *5 (D. Minn. Mar. 29, 2016).) The Court expresses its appreciation to Umsted for agreeing to assist Henderson-Hoving.

[2]At the time that she filed this action, Henderson-Hoving was known as Tamara Henderson-Prouty. Her former name is reflected in the caption and in most of the documents in the record.

in the same post office. A PSE is a better position than a PMR. Like a PMR, a PSE is a non-career position, but unlike a PMR, a PSE is a member of a bargaining unit. Three months later, the USPS decided to eliminate the PSE position at the Balaton post office without having acted on Henderson-Hoving's application.

Henderson-Hoving filed this lawsuit, alleging that the USPS discriminated against her in violation of the Age Discrimination in Employment Act ("ADEA") when it did not hire her to fill the vacant PSE position in Balaton. The USPS now moves for summary judgment. Because a reasonable jury could not find that the decision of the USPS was motivated by age-related animus, the Court grants the motion for summary judgment and dismisses this action.

## I. BACKGROUND

### A. The USPS's Reorganization

In May 2012, the USPS announced the POStPlan (the "Plan"), a comprehensive reorganization that was intended to "realign retail window service hours to better match customer use." ECF No. 40-3 at 6. The Plan called for major cuts in staff and operating hours at thousands of low-volume post offices. *Id.* at 6–9. The USPS developed the Plan in response to the "severe financial stress" that it was experiencing at the time. *Id.* at 5.

Shortly after the Plan was announced, the American Postal Workers Union ("APWU") filed a grievance, arguing that the Plan violated provisions of a 2010 agreement between the USPS and the APWU. *Id.* at 10. The grievance was referred to arbitrator Stephen B. Goldberg, who held hearings on May 1, September 19, and September 25 of 2013, and August 27 and August 28 of 2014. *Id.* at 2.

Goldberg issued his award on September 5, 2014. In that award, Goldberg concluded that the USPS had violated its agreement with the APWU and needed to "undo" many of the actions that it had taken pursuant to the Plan. *Id.* at 3–4. The Goldberg Award ruled certain categories of work in certain categories of post offices could be performed only by certain categories of employees. *Id.* at 3. Of particular relevance to this case, Goldberg determined that all "clerk craft work" in Level 6 post offices had to be performed by career bargaining unit clerks. *Id.* Goldberg did not specify how to implement the sweeping changes that his award required; rather, he directed the USPS and the APWU "to determine a reasonable process for accomplishing the transfer of work." *Id.*

On September 22, 2014, the USPS and the APWU executed a Memorandum of Understanding ("MOU No. 1") regarding the implementation of the Goldberg Award. ECF No. 40-6. MOU No. 1 provided that the USPS would fill the career bargaining unit positions at Level 6 offices "within 90 days of the date of this document"—i.e., by

December 21, 2014.  *Id.* at 1.  The USPS and the APWU agreed to a second Memorandum of Understanding ("MOU No. 2") on October 8, 2014.  That memorandum set forth a "pecking order" for filling career bargaining unit positions in post offices affected by the Goldberg Award.  ECF No. 40-7.

The Balaton post office—where Henderson-Hoving worked as a PMR and hoped to work as a PSE—is a Level 6 office.  ECF No. 40-4 ¶ 7.  Consequently, the USPS was required by the Goldberg Award and MOU No. 1 to staff the Balaton office with career bargaining unit employees by December 21, 2014.  In other words, as of December 21, 2014, the USPS was *prohibited* from staffing the Balaton post office with PMRs or PSEs (neither of which is a career bargaining unit position), meaning that the USPS was *required* to eliminate the PSE position for which Henderson-Hoving had applied.  Henderson-Hoving's complaint, then, is that the USPS did not give her the PSE position in Balaton shortly before the USPS was required to eliminate that position.[3]

In the months following the issuance of the Goldberg Award (on September 5, 2014), MOU No. 1 (on September 22, 2014), and MOU No. 2 (on October 8, 2014), USPS

---

[3]According to Henderson-Hoving, the USPS's failure to act on her application for the Balaton PSE position cost her more than just a short-lived promotion.  She also missed out on the opportunity to further advance her career through conversion into a part-time flexible ("PTF") or non-traditional full-time ("NTFT") role in 2014—three years earlier than she otherwise was able to do so—because only PSEs (but not PMRs) were eligible for conversion into these higher-level positions after the Goldberg Award took effect.  ECF No. 34 ¶¶ 25–26, 54; ECF No. 40-7.

managers were in a state of limbo while they waited to hear exactly how and when the USPS would implement the required changes. *See* ECF Nos. 40-13, 45-20, 45-21, and 45-22. Emails exchanged among managers and human-resources officials demonstrate that the USPS did not have a clear plan about whether PSE and PMR positions affected by the Goldberg Award should be filled prior to December 21, 2014. *See, e.g.*, ECF No. 45-22 (email dated September 26, 2014: "[U]ntil we know what will be occurring as a result of the Goldberg decision, you will need to make an informed decision as to how you are going to staff your office until those actions are implemented."). It was clear to everyone, however, that following the December 21, 2014, deadline, the USPS would be barred by the Goldberg Award from filling PSE positions in Level 6 post offices.

*B. Treatment of Henderson-Hoving and Her "Comparator"*

As the Court describes below, Henderson-Hoving relies mostly on "comparator" evidence to support her claim that the USPS was motivated by her age when it failed to give her the PSE position in the Balaton post office. Comparator evidence is evidence that another person who was outside of the protected class—but otherwise "similarly situated in all relevant respects"—was treated more favorably than the plaintiff. *Johnson v. Securitas Sec. Servs. USA, Inc.*, 769 F.3d 605, 613 (8th Cir. 2014) (quotation omitted). Here, the relevant protected class is composed of those age 40 and older.

Henderson-Hoving points to a USPS employee named Brita Fricke as a comparator. The Court must therefore compare the experiences of Henderson-Hoving and Fricke.

Henderson-Hoving was hired as a PMR in the Balaton post office in April 2013. ECF No. 45-7 at 5.  On September 11, 2014—after the Goldberg Award was issued, but before MOU No. 1 was issued—the USPS posted the vacant PSE position at the Balaton post office.  ECF No. 39-6.  Henderson-Hoving submitted her application on September 22, 2014, the same day that MOU No. 1 was issued.  ECF No. 40-11 at 7.  She passed the PSE exam—a prerequisite to being hired as a PSE—on October 1, 2014.  ECF Nos. 45-10 at 1; 45-7 at 11, 29.  At the time of her application, Henderson-Hoving was 55 years old.  *See* ECF No. 45-7 at 4 (Henderson-Hoving was born in 1959).

At about the time that Henderson-Hoving was hired as a PMR in the Balaton post office, Fricke was hired as a PMR in the Russell, Minnesota, post office.  ECF No. 40-1 at 6.  Like Henderson-Hoving, Fricke also applied for a PSE position in 2014, but whereas Henderson-Hoving applied for a PSE position in Balaton, Fricke applied for a PSE position in Tracy, Minnesota.  *Id.* at 5.  The Tracy PSE position was posted on July 23, 2014—*before* the Goldberg Award was issued, ECF No. 39-3—and Fricke applied for the position on July 29, 2014, ECF No. 40-1 at 12.  At the time of her application, Fricke was 26 years old.  *See* ECF No. 45-17 at 1 (Fricke was born in 1988).

Sue Schreier, the Postmaster in the Tracy post office, was the selecting official responsible for filling both the Balaton PSE position (sought by Henderson-Hoving) and the Tracy PSE position (sought by Fricke). ECF No. 39 ¶¶ 2, 5, 8, 14. In her role as selecting official, Schreier would notify the human-resources department ("HR") any time she had a job opening that she wanted to fill. *Id.* ¶ 5. After approving her request, HR would solicit applications by posting the vacancy. *Id.* Following the close of the application period, HR would forward to Schreier a list of applicants for her to interview. *Id.* ¶ 7. Only after receiving this list of applicants from HR would Schreier move forward with the interview and selection phases of the hiring process. *Id.*

Schreier followed this process for both the Balaton and Tracy PSE positions. The Tracy posting closed on July 30, 2014, and Schreier received a list of qualified candidates from HR on August 14, 2014. *Id.* ¶¶ 10–11. Schreier selected Fricke for the Tracy position on August 27, 2014, and sent the relevant paperwork to HR to be finalized. *Id.* ¶ 12. After receiving final approval from HR on September 19, 2014, Schreier notified Fricke of her selection.[4] *Id.* ¶ 13.

---

[4] According to the USPS, HR completed its review and processing of Fricke's selection on September 11, 2014. ECF No. 45-6 at 8.

As to the Balaton posting, however, Schreier never received a list of qualified candidates from HR.  *Id.* ¶ 15.[5]  Schreier nevertheless emailed her supervisor on the morning of December 10, 2014, and told him that she "would like [Henderson-Hoving] converted to a PSE" in the Balaton post office.  *See* ECF No. 39-7.  Later that day, though, HR informed Henderson-Hoving that the USPS had decided not to fill the Balaton PSE position.  ECF No. 40-12.

On January 4, 2015, Henderson-Hoving emailed HR to complain that she had "been treated unfairly and most likely discriminated against."  ECF No. 40-14 at 2.  HR responded the following day and explained that "PSEs can no longer be staffed in [Level 6] offices due to the September 5, 2014 Goldberg Arbitration Settlement."  *Id.* at 1.  HR recommended that Henderson-Hoving review the Goldberg Award and the MOUs.  *Id.*

Henderson-Hoving eventually obtained a PSE position in the Lynd, Minnesota post office in October 2015.  ECF No. 45-7 at 5.  Two years later, she obtained a PTF clerk position in the Tracy post office.  *Id.* at 4–5.  And then, in June 2021, Schreier chose

---

[5]Schreier was not involved with implementing the Goldberg Award or the MOUs or deciding whether or not PSEs would continue to be hired in Level 6 offices prior to December 21, 2014.  ECF No. 39 ¶¶ 17–18; *see also* ECF No. 45-18 at 1 ("[W]ith this new Clerk win, I don't know what will be taking place.  If they will allow us to post positions.").

Henderson-Hoving for promotion to a NTFT position in the Walnut Grove, Minnesota, post office, where Henderson-Hoving remains employed. *Id.* at 4.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Id.* at 255.

### B. Age Discrimination

The ADEA prohibits the federal government (including the USPS) from considering age when making personnel decisions. 29 U.S.C. § 633a(a); *Babb v. Wilkie*, 140 S. Ct. 1168, 1171 (2020) ("The plain meaning of the [statute] demands that personnel actions be untainted by any consideration of age."). Henderson-Hoving alleges that the USPS discriminated against her on the basis of age in violation of the ADEA when it decided not to fill the PSE vacancy at the Balaton post office.

Henderson-Hoving identifies Schreier as the official who decided not to give her the PSE position in Balaton and whose decision was motivated by age-related animus. Henderson-Hoving concedes that she has no direct evidence—such as ageist comments uttered by Schreier—that any decision by Schreier was motivated by age. The absence of direct evidence is not surprising. After all, Schreier emailed her supervisor in December 2014, told him that she *wanted* Henderson-Hoving to get the PSE position in Balaton, and explained why she wanted to promote Henderson-Hoving. *See* ECF No. 39-7. Moreover, several years later—when Henderson-Hoving was even older—Schreier promoted her to an NTFT position in another post office. ECF No. 45-7 at 4. It is difficult to reconcile Schreier's demonstrated support for Henderson-Hoving with Henderson-Hoving's claim that Schreier was hostile to her on account of her age.

Henderson-Hoving argues that she nevertheless has indirect evidence that Schreier was motivated by Henderson-Hoving's age when Schreier failed to give her the PSE position in Balaton. The parties agree Henderson-Hoving's claim must be analyzed under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a prima facie case of discrimination under *McDonnell Douglas*, Henderson-Hoving must show that she "(1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) can provide facts that give rise to an inference of unlawful . . . discrimination." *Butler v. Crittenden Cnty.*, 708 F.3d

-10-

1044, 1050 (8th Cir. 2013).  Once Henderson-Hoving establishes a prima facie case of discrimination—which, for the sake of argument, the Court will assume that she has—the burden shifts to the USPS to articulate a legitimate, nondiscriminatory reason for not hiring Henderson-Hoving to fill the PSE position in Balaton.  *See Canady v. Wal-Mart Stores, Inc.*, 440 F.3d 1031, 1034 (8th Cir. 2006).

The USPS has met its burden.  Schreier has explained that she had nothing to do with the decision to cancel the PSE vacancy in Balaton.  ECF No. 39 ¶¶ 17–18.  Schreier has also explained that she did not act to fill the PSE vacancy before it was canceled because she never received a list of applicants from HR—and, without such a list, she did not believe that she could move forward with the hiring process.  *Id.* ¶¶ 7, 15.  For its part, the USPS has said that it decided to cancel the PSE vacancy because the Goldberg Award and the MOUs required that the position be eliminated no later than December 21, 2014.  *See* ECF No. 45-6 at 3 ("[T]he posting was canceled due to staffing changes required by the Goldberg decision and the resulting APWU-USPS Memorandum implemented under Goldberg.").

Because the USPS has articulated a legitimate, nondiscriminatory reason for not giving Henderson-Hoving the PSE position in Balaton, the burden shifts back to Henderson-Hoving to cite sufficient evidence to support a jury verdict that the USPS's articulated reason was a pretext for age discrimination.  *See Williams v. United Parcel*

-11-

*Serv., Inc.*, 963 F.3d 803, 808 (8th Cir. 2020). "There are multiple ways a plaintiff can show pretext. One is by demonstrating that the employer's stated reason for the termination is false. . . . Another way is by presenting evidence that the employer 'treated similarly-situated employees in a disparate manner.'" *Id.* (quoting *Lake v. Yellow Transp. Inc.*, 596 F.3d 871, 874 (8th Cir. 2010)). Henderson-Hoving argues both that the USPS's and Schreier's explanations for not giving her the Balaton PSE position are false and that Schreier treated a comparator in a disparate manner.

1. Comparator Evidence

For the most part, Henderson-Hoving relies on comparator evidence in trying to establish pretext. Specifically, Henderson-Hoving argues that, even though Fricke and she were similarly situated, Schreier "launched Fricke's career into orbit [while] she halted Henderson-Hoving's career in its tracks." ECF No. 44 at 15.

The problem with this argument is that Henderson-Hoving and Fricke were not similarly situated. The Eighth Circuit has on numerous occasions held that "[a]t the pretext stage, the test for whether someone is sufficiently similarly situated, as to be of use for comparison, is rigorous. [The plaintiff] must show that [s]he and the employees outside of [her] protected group were similarly situated in all relevant respects." *Johnson*, 769 F.3d at 613 (cleaned up and quotations omitted); *see also Charleston v. McCarthy*, 8 F.4th 772, 780 (8th Cir. 2021) (same); *Gardner v. Wal-Mart Stores, Inc.*, 2 F.4th

745, 750 (8th Cir. 2021) (same); *Maras v. Curators of Univ. of Mo.*, 983 F.3d 1023, 1029 (8th Cir. 2020) (same).

Henderson-Hoving and Fricke were not similarly situated in all relevant respects. The Goldberg Award and subsequent MOUs were seismic events that completely upended the hiring practices of the USPS. Of particular relevance to this case, the Goldberg Award and the MOUs made clear that, after December 21, 2014, PSEs could no longer be employed at Level 6 post offices.

Both Fricke and Henderson-Hoving applied for PSE positions at Level 6 post offices. But Fricke applied for the Tracy position on July 29, 2014, *before* the Goldberg Award was issued; Henderson-Hoving applied for the Balaton position on September 22, 2014, *after* the Goldberg Award was issued. Schreier received a list of qualified candidates for the Tracy position from HR on August 14, 2014, again *before* the Goldberg Award was issued; Schreier *never* received a list of qualified candidates for the Balaton position from HR. Schreier selected Fricke for the Tracy position on August 27, 2014, still *before* the Goldberg Award issued; the only thing that happened after the Goldberg Award issued was that HR processed the paperwork implementing Schreier's decision. That processing was completed on September 11, 2014, less than a

week after the Goldberg Award was issued, and before the USPS and the APWU agreed on how the Goldberg Award would be implemented.[6]

Clearly, then, Fricke does not pass the "rigorous" test "for whether someone is sufficiently similarly situated, as to be of use for comparison." *Johnson*, 769 F.3d at 613. To show pretext through comparator evidence, Henderson-Hoving must show that she was treated differently from an individual who, like Henderson-Hoving, applied for a PSE position that had been posted *after* the Goldberg Award was issued (i.e., those postings identified in plaintiff's exhibit 5, ECF No. 45-5), but who, unlike Henderson-Hoving, received the position. There is no evidence that *any* of the PSE positions that were posted in the Northland District[7] after the Goldberg Award was issued were filled. ECF No. 45-6 at 6. In other words, as far as the record reflects, Henderson-Hoving was

---

[6]The Court recognizes that the record is unclear about the exact dates of each step of Fricke's hiring. *Compare* ECF No. 39 ¶¶ 12–13 (Schreier declaration) and ECF No. 40-1 ¶ 10 (McMahon declaration), *with* ECF No. 45-15 at 10 (Tracy PSE position HR data entry logs). These factual discrepancies are immaterial, however, as nothing in the record contradicts the conclusion that the hiring process for Fricke began before the Goldberg Award was issued and that she was formally offered the position before MOU No. 1 clarified how the Goldberg Award would be implemented. *See Anderson*, 477 U.S. at 248 ("Factual disputes that are irrelevant or unnecessary will not be counted [to preclude summary judgment].").

[7]The Balaton and Tracy post offices are both located in the Northland District. *See* ECF No. 39 ¶¶ 5, 8, 14. The record does not contain evidence about post offices in any other USPS district.

treated like everyone else—young and old—who applied for a PSE position after the Goldberg Award was issued.

### 2. Evidence of Falsity

Henderson-Hoving also tries to demonstrate that Schreier and the USPS lied in describing the reasons for their actions. Once again, however, the evidence in the record does not support Henderson-Hoving.

As noted, Schreier has explained that she had nothing to do with the decision to cancel the PSE vacancy in Balaton. Henderson-Hoving does not challenge Schreier's testimony on this point. The record is clear that Schreier—who, according to Henderson-Hoving, is the individual who discriminated against her—had nothing to do with the cancellation of the Balaton (or any other) PSE position. *See* ECF No. 39 ¶¶ 17–18 (Schreier did not know position would be canceled and was not involved in decision). To the contrary, the evidence in the record indicates that the decision to cancel the Balaton PSE position was made by some unidentified person or persons at the USPS, and it was "effectuated by" an HR employee named Jessica Martin. ECF No. 45-6 at 3.

Schreier has also explained that she did not act to fill the PSE vacancy in Balaton because she never received a list of applicants from HR—and, without such a list, she did not believe that she could move forward with the hiring process. ECF No. 39 ¶¶ 7,

-15-

15.  At oral argument, Henderson-Hoving disputed Schreier's characterization of her own authority, suggesting that Schreier did not have to wait for HR to act before selecting a candidate to fill a position.  *See also* ECF No. 44 at 9 (alleging that "Schreier sat in the driver's seat when filling the Balaton PSE vacancy" and that the USPS regularly converted PMRs to PSEs without an interview).  But argument is not evidence, and there is no evidence that what Henderson-Hoving argues is true.  Moreover, because Henderson-Hoving must show that Schreier was subjectively motivated by age-based animosity, what matters is not the scope of Schreier's *actual* authority, but what Schreier *believed* about the scope of her authority.  *See Main v. Ozark Health, Inc.*, 959 F.3d 319, 325 (8th Cir. 2020) ("[A] plaintiff may not establish pretext simply by showing that the employer's 'honest' belief was erroneous . . . .").  There is no evidence in the record contradicting Schreier's claim that she did not believe that she could proceed to fill a position without first getting a list of qualified applicants from HR.  All of the evidence in the record—in particular, Schreier's actions with respect to Fricke's and Henderson-Hoving's applications—is consistent with Schreier's testimony about her understanding of the scope of her authority.  ECF No. 39.

Finally, the USPS has said that it decided not to fill the Balaton PSE position because the Goldberg Award and the MOUs required that the position be eliminated no

later than December 21, 2014. ECF No. 45-6 at 3–4; ECF No. 40-1 at 3, ¶¶ 15–17. Henderson-Hoving says that the USPS must be lying for two reasons:

First, Henderson-Hoving argues that the Goldberg Award and the MOUs did not actually *prohibit* the USPS from filling the Balaton PSE position prior to December 21, 2014. *See* ECF No. 44 at 21–23. But the USPS has not said that it was *forbidden* to fill the Balaton PSE position prior to December 21, 2014; it has said that it *chose* not to fill that position because that position was about to be eliminated.

Second, Henderson-Hoving alleges that "the Postal Service and Schreier posted and hired many PSE positions that would eventually be eliminated under the Goldberg Award—but they refused to hire Henderson-Hoving or even consider her application." *Id.* at 27. Again, though, argument is not evidence, and the evidence refutes this argument. Henderson-Hoving offers only one example of a PSE vacancy that was filled after the Goldberg Award was issued: the Tracy PSE position that was given to Fricke. *See id.* at 26. As explained above, however, Fricke's hiring process was essentially complete before the Goldberg Award was issued. And as also explained above, *none* of the PSE positions that were posted in the Northland District after the Goldberg Award was issued were filled. *See* ECF No. 45-6 at 6.

In sum, nothing in the record casts doubt on the sincerity of USPS's explanation that it chose not to fill the Balaton PSE position because, pursuant to the Goldberg

-17-

Award and the MOUs, that position would have to be eliminated in the near future. It also bears mention that a plaintiff who is attempting to demonstrate that a defendant's explanation for a job action is pretextual "must show '*both* that the reason was false, *and* that discrimination was the real reason.'" *Williams*, 963 F.3d at 808 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original)). There is zero evidence in the record that any of the decisions made about the PSE position in Balaton—whether those decisions were made by Schreier or someone else—had anything to do with Henderson-Hoving's age. The USPS is entitled to summary judgment.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant's motion for summary judgment [ECF No. 36] is GRANTED.

2. Plaintiff's complaint [ECF No. 34] IS DISMISSED WITH PREJUDICE AND ON THE MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: January 28, 2022

_____
Patrick J. Schiltz
United States District Judge